# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

**FILED BY EMAIL AND UNDER SEAL**

June 18, 2025

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

   Re:  *Google LLC v. Does 1–25*, Case No. 25-cv-04503

Dear Judge Oetken:

  I write on behalf of Plaintiff Google LLC ("Google") to respectfully notify the Court of Google's intention to amend Appendix A to the Complaint ("Appendix A") pursuant to the Temporary Restraining Order ("TRO") and to request a brief *ex parte* telephonic conference at the Court's convenience to provide additional detail concerning the amendments. Google also respectfully requests that the Court unseal the case, with the exception of certain documents for which Google seeks limited redactions as described below. Google respectfully seeks this relief on or before Google's Friday, June 20, 2025, deadline to serve Defendants, so that Google may serve the amended and redacted filings.

  ***Background.*** On May 30, 2025, this Court entered a TRO to enjoin Defendant Does 1–25 ("Defendants") from exploiting the BadBox 2.0 botnet—the largest known botnet of internet-connected TV devices in history—to commit cybercrimes in violation of the Racketeer Influenced and Corrupt Organizations Act and the Computer Fraud and Abuse Act. Defendants silently infect devices with malware and gain unauthorized backdoor access to home networks through compromised personal devices, such as TVs, streaming devices, digital projectors, digital picture frames, and other products.[1] The botnet has already been used to

---

[1] The FBI recently issued a Public Service Announcement concerning the BADBOX 2.0 botnet and its cyber-criminal activity on residential devices. Public Service Announcement, FBI, *Home Internet Connected Devices Facilitate Criminal Activity*, Alert Number: I-060525-PSA (June 5, 2025), https://tinyurl.com/3b574bw2.

June 18, 2025
Page 2

commit cybercrimes on a global scale, harming millions in the United States and around the world, and it could be used to cause even more harm with dangerous ransomware or distributed denial-of-service attacks. And the threat continues to evolve: Defendants have already begun to develop new malware to infect more devices.[2]

The TRO authorized Google to execute a technical disruption of certain domains identified in Appendix A. Although Google's efforts remain ongoing, the disruption effected thus far already has resulted in one of the most significant botnet takedowns of the past decade. In this initial phase, Google and its partner, The Shadowserver Foundation,[3] have sinkholed 149 of the 154 domains listed in Appendix A, which has revealed malicious activity affecting roughly 6.7 million unique IP addresses.[4] Pursuant to the TRO, registrars and registries also provided contact information for the owners of the malicious domains, which Google will use to serve Defendants.[5]

*Amendments to Appendix A.* Google intends to amend the list of domains in Appendix A as set forth in **Exhibit 1** and described below.

- **Substitution of Certain Domains with Subdomains.** Google received feedback from certain domain owners indicating that some domains listed in Appendix A supported a mix of legitimate and illegitimate activity, and that sinkholing those domains disrupted legitimate activity. Google has reversed the sinkholing of those domains and has removed them from Appendix A, as set forth in

---

[2] *See* Jessica Lyons, *CISO who helped unmask Badbox warns: Version 3 is coming*, The Register (June 11, 2025), https://tinyurl.com/yc8dfk2f.

[3] The Shadowserver Foundation is a nonprofit security organization that partners with national cyber security incident response teams, law enforcement, and private industry to detect and take down malicious internet activity. *See* The Shadowserver Foundation, *What We Do*, https://tinyurl.com/47zkts5k (last visited June 18, 2025).

[4] "Sinkholing is a technique whereby a resource used by malicious actors to control malware is taken over and redirected to a benign listener that can (to a varying degree) understand network connections coming from infected devices. This provides visibility of the distribution of infected devices worldwide, as well as protecting victims by preventing botnet command and control (C2) from cybercriminals." *See* The Shadowserver Foundation, *Dashboard*, https://tinyurl.com/2s36xp6w (last visited June 18, 2025).

[5] Although certain productions from registrars provided usable contact information, many of the domains are registered to false identities. For example, one domain was registered to "super man"; another to "super cat."

June 18, 2025
Page 3

> Exhibit 1. Google is working to target subdomains within those domains.
>
> - **Registrar Updates.** Certain domains listed on Appendix A have been transferred to a different registrar. Google has modified Appendix A to accurately reflect the current registrar or the registrar associated with the domain immediately prior to the transfer provided for in Appendix A.

Google may further amend Appendix A as it identifies additional domains and subdomains connected to BadBox 2.0.

To provide the Court with additional detail on the amendments to Appendix A, Google requests a brief *ex parte* telephonic conference at a time that is convenient for the Court.

***Request to Unseal the Case Except for Limited Redactions.*** Because Google will soon serve Defendants and its technical disruption is sufficiently advanced, this case no longer needs to remain under seal, and Google respectfully requests that the Court unseal the docket. *See Lugosch III v. Pyramid Co.*, 435 F.3d 110, 124–26 (2d Cir. 2006). A proposed order unsealing the case is attached as **Exhibit 2.** Not only will unsealing further "the strong presumption in favor of public access," *Lugosch*, 435 F.3d at 126, but it will provide the public with additional information concerning Defendants' criminal activity and this litigation.

Google respectfully requests that certain portions of a limited number of documents remain under seal. Specifically, Google requests that it be permitted to redact (1) information identifying the declarant in this action, and (2) the name of and circumstances surrounding removal of one domain from Appendix A.

Google seeks to redact information identifying its declarant to protect that individual's privacy interests and prevent harassment or retaliation from the Defendants. The Court's order granting Google's requested relief effected a major disruption to the Defendants' botnet and, as a result, its financial interests. Defendants may seek to retaliate. Indeed, a Defendant already has contacted a member of Google's legal team by email, asking "How did you steal someone else's domain name? Why?" Other Defendants may follow suit or may retaliate once the case is unsealed.

Courts may redact the name of a declarant when publishing the individual's name "may increase the likelihood of future threatening behavior, implicating concerns of witness safety and the danger of impairing judicial efficiency." *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT), 2023 WL 3477552, at *2 (S.D.N.Y. May

June 18, 2025
Page 4

16, 2023) (redacting "the names and other identifying information of its expert witnesses and investor declarants"). Google's proposed redactions therefore "are 'necessary to preserve higher values' of witness safety and judicial efficiency." *Id.* (quoting *Lugosch*, 435 F.3d at 124).

And the redactions Google seeks—to only a few isolated mentions of the declarant's name and other identifying information, set forth in **Exhibit 3**—are "narrowly tailored to protect only this sensitive . . . information." *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-4500-GHW, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021). They thus offer meaningful protection to the declarant's privacy interests but do not unduly infringe on the Court's interest in public access to information.

Google also respectfully requests to redact a domain initially included on Appendix A. On this matter, Google requests that the Court permit it to provide any additional information that the Court might require *ex parte*. *United States v. Kakkera*, No. 1:22-cr-398-GHW-2, 2023 WL 4624681, at *1 (S.D.N.Y. July 19, 2023) (citing *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655(LTS)(MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012)) ("Higher values that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third-parties."). Proposed redactions to the original version of Appendix A are attached hereto as **Exhibit 4**.

For the foregoing reasons, Google respectfully requests that this Court: (1) schedule a brief, *ex parte* telephonic conference, (2) unseal the case, and (3) permit Google to make limited redactions to certain documents described above.

Respectfully submitted,

Laura Harris

*Counsel for Plaintiff*