**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

GOOGLE LLC,

        *Plaintiff,*

    v.

DOES 1–25,

        *Defendants.*

</td>
<td>

Civil Action No.: 1:25-cv-04503-JPO

</td></tr>
</table>

**GOOGLE LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
<u>**DEFAULT JUDGMENT AND A PERMANENT INJUNCTION**</u>

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

STATEMENT OF FACTS ....................................................................................................................2

      A.     Procedural History ..................................................................................................2

      B.     Injunctive Relief......................................................................................................3

      C.     Google Properly Served Defendants.....................................................................4

LEGAL STANDARD.............................................................................................................................6

ARGUMENT ..........................................................................................................................................7

I.     This Court has Jurisdiction Over the Defendants. ...............................................................7

II.    Google is Entitled to Default Judgment.................................................................................8

III.   Google is Entitled to a Permanent Injunction. ...................................................................10

IV.   Google Withdraws Its Damages Request. ...........................................................................13

CONCLUSION......................................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Antetokounmpo v. Searcy*,
2021 WL 3233417 (S.D.N.Y. May 20, 2021) ...........................................................6

*BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd.*,
2021 WL 3675072 (S.D.N.Y. Aug. 18, 2021) .........................................................10

*Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v.
Moulton Masonry & Constr.*,
779 F.3d 182 (2d Cir. 2015)......................................................................................8

*Church of Scientology Int'l v. Elmira Mission of Church of Scientology*,
794 F.2d 38 (2d Cir. 1986)........................................................................................11

*eBay Inc. v. MercExchange LLC*,
547 U.S. 388 (2006)..................................................................................................11

*Finkel v. Romanowicz*,
577 F.3d 79 (2d Cir. 2009)........................................................................................6

*FTC v. 1263523 Ontario, Inc.*,
205 F. Supp. 2d 205 (S.D.N.Y. 2002).......................................................................6

*FTC v. Verity Int'l, Ltd.*,
2000 WL 1805688 (S.D.N.Y. Dec. 8, 2000) ...........................................................12

*FXDirectDealer, LLC v. Abadi*,
2012 WL 1155139 (S.D.N.Y. Apr. 5, 2012).............................................................12

*Google LLC v. Starovikov*,
2022 WL 1239656 (S.D.N.Y. Apr. 27, 2022)...........................................................8

*Guggenheim Cap., LLC v. Birnbaum*,
722 F.3d 444 (2d Cir. 2013)......................................................................................8

*Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*,
2007 WL 4468652 (S.D.N.Y. Dec. 20, 2007) .................................................8, 9, 10

*Kelly Toys Holdings, LLC v. alialialiLL Store*,
606 F. Supp. 3d 32 (S.D.N.Y. 2022)......................................................................8, 9

*Khepera-Bey v. Santander Consumer USA, Inc.*,
2013 WL 3199746 (D. Md. June 21, 2013)..............................................................11

*Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*,
    2013 WL 5977440 (S.D.N.Y. Nov. 12, 2013)................................................................10, 11

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)...........................................................................................7

*Mason Tenders Dist. Council v. Duce Constr. Corp.*,
    2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003)...............................................................9

*Microsoft Corp. v. Does 1–2*,
    2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021) ...........................................................13

*Microsoft Corp. v. Does 1–51*,
    2018 WL 3471083 (N.D. Ga. June 18, 2018)..............................................................13

*Microsoft Corp. v. Does 1–8*,
    2015 WL 4937441 (E.D. Va. Aug. 17, 2015)..............................................................11

*Microsoft Corp. v. Tu*,
    2024 WL 4516416 (S.D.N.Y. Aug. 29, 2024).............................................................12

*N.Y.C.L. Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012).........................................................................................10

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
    97 F. Supp. 3d 536 (S.D.N.Y. 2015)............................................................................10

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ...........................................................................................8

*US Airways, Inc. v. US Airline Pilots Ass'n*,
    813 F. Supp. 2d 710 (W.D.N.C. 2011) .......................................................................12

**Statutes**

18 U.S.C. § 1030....................................................................................................................2

18 U.S.C. § 1962....................................................................................................................2

**Rules**

Fed. R. Civ. P. 8....................................................................................................................6

Fed. R. Civ. P. 12..................................................................................................................2

Fed. R. Civ. P. 55 .............................................................................................................1, 6

Fed. R. Civ. P. 65..................................................................................................................1

Local Civil Rule 55.2 .................................................................................................................1

**INTRODUCTION**

Plaintiff Google LLC ("Google") respectfully moves the Court to enter default judgment and issue a permanent injunction to prevent Defendants Does 1–25 (collectively, "Defendants") from continuing to grow, control, and profit from the BadBox 2.0 botnet as part of a sophisticated criminal enterprise (the "BadBox 2.0 Enterprise" or the "Enterprise") and to prevent further harm to Google and the general public that would be caused absent such permanent injunctive relief. Defendants failed to timely appear, and on August 27, 2025, the Clerk entered a Certificate of Default.

As set forth in Google's pleadings and this Court's prior orders, the Defendants use the BadBox 2.0 botnet to infect victims' devices with malware that provides persistent access to the devices and conscripts them into the botnet. In so doing, Defendants increase the botnet's computing power with each new device that is infected. The Enterprise uses its illicit access to devices in the botnet to commit a range of cybercrimes, including sophisticated ad fraud schemes, and selling access to the devices to other cybercriminals (the "BadBox 2.0 Scheme"). The Enterprise has already harmed millions of victims around the world, including in New York, and, absent the relief Google seeks here, will continue to harm Google, device users, and the public.

Google now seeks—pursuant to Local Civil Rule 55.2 and Federal Rules of Civil Procedure 55(b)(2) and 65—(1) default judgment against the Defendants, and (2) a permanent injunction prohibiting Defendants from operating the Enterprise and permanently transferring ownership of the malicious domains used by Defendants to perpetrate their criminal schemes.

1

## STATEMENT OF FACTS

### A.    Procedural History

Google filed this suit under seal on May 30, 2025, alleging that Defendants' criminal activity violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4), (a)(5)(A), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. ECF No. 22. Google moved for an Emergency Ex Parte Temporary Restraining Order and Order to Show Cause ("TRO Motion") to enjoin Defendants' unlawful conduct. *See* Declaration of Laura Harris in Support of Google's Motion for Default Judgment and a Permanent Injunction ("Harris Decl.") ¶ 6. This Court entered an Emergency Ex Parte Temporary Restraining Order and Order to Show Cause ("TRO") on May 30, 2025. *Id*. Google requested, and the Court granted, a two-week extension of the TRO on June 6, 2025. ECF No. 17. Pursuant to the alternative service requirements provided for in the TRO, Google duly served Defendants with its Complaint, the TRO, the TRO Motion, and all attendant papers. ECF No. 34 at Ex. D; Harris Decl. ¶ 2. Following its execution of the TRO, Google asked the Court to convert the TRO to a Preliminary Injunction Order, ECF No. 6, which the Court granted on June 27, 2025. ECF No. 18; Harris Decl. ¶ 6. Three days later, the action was unsealed. ECF No. 16; Harris Decl. ¶ 6. Google then duly served the Preliminary Injunction Order on Defendants. ECF No. 34 at Ex. D; Harris Decl. ¶¶ 2, 16, 18. Defendants have failed to appear, defend, or plead in response to the Complaint, TRO, or Preliminary Injunction Order. ECF No. 35; Harris Decl. ¶ 4. Accordingly, no later than August 1, 2025, Defendants were in default under Federal Rule of Civil Procedure 12(a)(1)(A)(i). On August 27, 2025, the Clerk entered a Certificate of Default. ECF No. 35; Harris Decl. ¶ 7.

**B.    Injunctive Relief**

The Court has made several factual findings in the course of issuing preliminary injunctive

relief to Google, including that:

- ***The Court has jurisdiction***, ECF No. 18 ¶¶ 1–2;

- ***Google will suffer immediate and irreparable harm absent the injunctive relief
  it seeks here and that the Court has ordered preliminarily.*** Google has shown
  that Defendants—through their participation in, and operation of, the BadBox 2.0
  Enterprise—have threatened the security of the Internet, including Google
  platforms, by transmitting malware through the Internet to configure, deploy, and
  operate a botnet. Defendants have distributed malware on user devices that use
  the Android Open Source Project ("AOSP") operating system, which Google
  created and retains a role in overseeing, that compromises the security of those
  devices, exploits those devices to carry out a variety of advertising frauds,
  including through the Google Ad Network, and makes those devices tools of
  various other cybercrimes by selling access to those devices to other threat actors
  so that they may connect to an infected device's IP address and use it to mask
  their location. ECF No. 18 ¶ 6.

- ***Google has shown a likelihood of success on the merits of its CFAA claim.***
  Defendants violated and continue to violate the CFAA by intentionally causing
  malware and commands to be transmitted to infected devices, which are used in
  or affect interstate or foreign commerce or communication, without users'
  knowledge or consent and doing so to further Defendants' fraudulent schemes,
  resulting in considerable value to Defendants. ECF No. 18 ¶ 10.

- ***Google has shown a likelihood of success on the merits of its RICO claim.***
  Defendants violated and continue to violate the RICO statute by showing that
  Defendants are active participants in the operation and management of the
  BadBox 2.0 botnet, which is connected to "command-and-control" servers ("C2
  Servers") associated with perpetrating fraudulent ads and proxying activity on
  infected devices. Google also demonstrated that Defendants were part of an
  enterprise, engaged in a pattern of racketeering activity, and that Google has
  suffered injury to its business or property as a result of these predicate offenses,
  including through Defendants' ad fraud schemes and use of the botnet to sell
  residential proxy access, by the refunds Google issues for fraudulent ad traffic,
  and by devoting substantial financial resources to investigate and combat
  Defendants' criminal schemes in order to protect its goodwill and reputation. ECF
  No. 18 ¶ 11.

Based on these findings, through its Preliminary Injunction Order, the Court enjoined

Defendants from perpetrating further violations of law and ordered third parties hosting or

providing services to cause the Internet domains used by Defendants to effectuate their Enterprise to be disabled and otherwise redirected to Google's control. ECF No. 18 at 9–12.

### C.    Google Properly Served Defendants

This Court's TRO and Preliminary Injunction Order set forth alternative methods by which Google could effectuate service—including by email, publication on a website, and registered mail. *See* ECF No. 34 at Ex. B. Google effectuated or attempted service by each alternative method ordered by the Court as follows:

*Email.* On June 20, 2025, King & Spalding attempted to effectuate service by email, as authorized by the Court. *See* Harris Decl. ¶ 15. Google received from the registrars 142 email addresses used to register domains listed in Appendix A. King & Spalding received delivery failure notifications for 91 of the 142 email addresses.[1] *Id*. ¶ 14. On July 10, 2025, King & Spalding attempted to effectuate service of additional filings, including an Amended Summons issued by the Clerk on July 10, 2025, to the 142 email addresses previously mentioned and an additional 9 email addresses associated with domains listed on Appendix A. *Id*. at 16. King & Spalding received delivery failure notifications for 92 of the 151 email addresses, which again included each of the "domainsbyproxy.com" email addresses and an email address associated with long[.]tv, which is not included on the Amended Appendix A. *Id*.

*Publication.* Google also effectuated service by publication through a publicly available website as authorized by the Court. Harris Decl. ¶ 17. On June 20, 2025, Google published the

---

[1] Each of the 91 email addresses for which King & Spalding received delivery failure notifications were hosted by domainsbyproxy.com. In each case, King & Spalding also emailed a different email address associated with domainsbyproxy.com. It did not receive a delivery failure notification for those associated email addresses.

website badbox2serviceofprocess.com, which contains links to all relevant pleadings and orders as well as contact information for Google's counsel. *Id*. ¶ 18. That website is routinely updated. *Id*.

The website prominently displays the following text:

> Plaintiff Google LLC ("Google") has sued Defendants Does 1–25 associated with the Internet domains listed in the pleading set forth below. Google alleges that Defendants have deployed BadBox 2.0 malware to form a botnet—a network of internet-connected devices, each of which is infected by BadBox 2.0 malware—to infiltrate devices and use that illicit access to commit cybercrimes. Google alleges that, through these actions, the Defendants have violated federal law. Google sought and received a temporary injunction enjoining the Defendants from these and other activities and directing the third parties associated with Defendants' Internet domains to take all steps necessary to disable access to and operation of BadBox 2.0-affiliated domains. Google intends to seek a preliminary injunction and other equitable relief. Full copies of the pleading documents, related filings, and orders from the Court are available below.

> NOTICE TO DEFENDANT: READ THESE PAPERS CAREFULLY! You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 21 days of the date of first publication specified herein. It must be in proper form and have proof of service on Google's attorney, Laura Harris, King & Spalding LLP, 1185 Ave. of the Americas, 34th Floor, New York, NY 10036. If you have questions, you should consult with your own attorney immediately.

***Registered Mail.*** Google also attempted to effectuate service by physical mail. Harris Decl. ¶ 21. Registrars produced 54 mailing addresses associated with relevant domains, but only five of the mailing addresses corresponded with destinations to which mail may be delivered. *Id*. On June 20, 2025, Google attempted to serve Defendants at those five addresses. *Id*. FedEx was unable to complete delivery to three out of five addresses because the address was wrong, or the recipient did not exist at that location. *Id*. ¶ 22. On July 23, 2025, Google attempted to serve the two remaining addresses with additional documents by FedEx. *Id*. ¶ 23. Both sets of documents were returned to the sender. *Id*. ¶ 24.

***Actual Notice.*** In addition to Google's efforts to serve Defendants, Defendants had actual notice of this lawsuit from Google's disruption efforts and the media attention surrounding those efforts. Following the Court's issuance of the TRO on May 30, 2025, Google began its efforts to sinkhole the Internet domains associated with the BadBox 2.0 botnet and the Enterprise. Harris Decl. ¶ 26. Google's efforts have led to the suspension or disruption of 156 domains associated with the BadBox 2.0 Enterprise, which routed up to 8 million IP addresses per day. ECF No. 18; Harris Decl. ¶¶ 26–27.

Furthermore, there has been significant media coverage of the litigation. *Id*. ¶ 29. Google has also published a blog post regarding this matter that links to a public version of the docket. *See* "We're taking legal action against the BadBox 2.0 botnet," Blog.Google, (July 17, 2025), https://tinyurl.com/2nxprn3r. *Id*. ¶ 28.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a district court may enter a default judgment when a party has failed to plead or otherwise defend against the action. *See, e.g.*, *FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205, 208 (S.D.N.Y. 2002). "Once the Clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b)." *Antetokounmpo v. Searcy*, 2021 WL 3233417, at *2 (S.D.N.Y. May 20, 2021). In deciding a motion for default judgment, the Court must accept all of the factual allegations in the plaintiff's complaint as true and draw all reasonable inferences in plaintiff's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

6

**ARGUMENT**

The Court should grant default judgment against all Defendants and enter a permanent injunction.

**I.      This Court has Jurisdiction Over the Defendants.**

As the Court has previously found, the Southern District of New York has both subject matter and personal jurisdiction over the Defendants. *See* ECF No. 18 ¶¶ 1–3.

***Subject matter jurisdiction.*** Pursuant to 28 U.S.C. § 1331, the Court has federal-question jurisdiction under over Google's claims under the CFAA and RICO statutes.

***Personal jurisdiction.*** "Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013). First, the court must find that jurisdiction lies under New York's long-arm statute. *Id.* "If jurisdiction lies," then the court must find that its "exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Id.*

This Court has personal jurisdiction over Defendants because "Defendants distribute malware within this district and New York State"; "use that malware to infect user devices in this district"; "send commands to infected user computers in this district and within New York State"; "use that fraudulently installed malware to sell access to the infected user devices so that Defendants and others may use the IP addresses of the infected devices to engage in fraudulent and criminal activity"; and "Defendants undertook these activities intentionally with knowledge that their actions would cause harm to users in New York and cause Google harm in New York." ECF No. 18 ¶ 2. As this Court has already found, these facts are sufficient to establish personal jurisdiction under New York's long-arm statute and comport with Constitutional due process. *See*

7

*Google LLC v. Starovikov*, 2022 WL 1239656, at \*4 (S.D.N.Y. Apr. 27, 2022) (finding personal

jurisdiction comports with New York's long-arm statute and due process where defendants

infected New York devices with malware and continued to issue commands to those devices); *see*

*also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 123 (2d Cir.

2021) (defendants subject to personal jurisdiction where "a co-conspirator's overt acts in

furtherance of the conspiracy had sufficient contacts with a forum to subject that co-conspirator to

jurisdiction in that forum") (brackets omitted).

## II.    Google Is Entitled to Default Judgment.

"[C]ourts within this district consider three factors" when deciding both whether to enter

default judgment and whether to vacate an entry of default: (1) "whether the defendant's default

was willful"; (2) "whether the defendant has a meritorious defense to plaintiff's claims"; and (3)

"the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion

for default judgment." *Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 48

(S.D.N.Y. 2022); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir.

2013) (applying these factors in review of lower court grant of a default judgment). Whether to

enter default judgment and whether to set aside an entry of default are both left to the district

court's sound discretion. *See, e.g.*, *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y.*

*Pension Fund v. Moulton Masonry & Constr.*, 779 F.3d 182, 186 (2d Cir. 2015); *Guggenheim*,

722 F.3d at 454. All three factors weigh in favor of entering default judgment.

*Willfulness.* When a party fails to appear after valid and effective service of process, courts

routinely find the default is willful. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*,

2007 WL 4468652, at \*1 (S.D.N.Y. Dec. 20, 2007); *see also Kelly Toys Holdings, LLC*,

606 F. Supp. 3d at 49 (concluding default judgment was warranted where the defaulting

defendants had "willfully failed to appear, answer, or otherwise respond to the Complaint or comply with the . . . TRO and PI Order"). Here, Defendants have been served in multiple ways, have actual notice, and have still not appeared. Accordingly, the willfulness factor weighs in favor of entering default judgment against the Defendants.

*Meritorious Defenses.* When a defaulting party fails to present arguments in its defense, the court may presume the absence of a meritorious defense. *See, e.g.*, *Kelly Toys Holdings, LLC*, 606 F. Supp. 3d at 49 ("By virtue of their failure to appear, Defaulting Defendants have likewise failed to present any meritorious defenses."); *Indymac Bank, F.S.B.*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether these defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court. Thus, Plaintiff's allegations are deemed admitted."); *Mason Tenders Dist. Council v. Duce Constr. Corp.*, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (finding that the second factor regarding meritorious defenses "need not be addressed" when the defendants "have failed to proffer any defense and are therefore deemed to have admitted the well-pleaded allegations of the Complaint"). Defendants in this action have failed to appear at all, let alone present meritorious defenses. Accordingly, this factor weighs in favor of entering default judgment as well.

*Prejudice.* Finally, denial of a motion for default judgment would be unfairly prejudicial to Google given that Defendants have failed to respond to any of this Court's orders, and there is no indication that "requiring [Google] to take further steps prior to a determination on the merits would be effective in eliciting a response from Defendants." *Mason Tenders Dist. Council*, 2003 WL 1960584 at *3; *see also Indymac Bank, F.S.B.*, 2007 WL 4468652 at *1 (finding that denial of motion for default judgment would be unfairly prejudicial due to defendants' failure "to appear, defend, or plead in response to any of the substantive allegations"); *Kelly Toys Holdings, LLC*, 606

9

F. Supp. 3d at 49 (concluding that denial of motion for default judgment "would be highly prejudicial to Plaintiff since Plaintiff would be left without any recourse to address Defaulting Defendants' unlawful conduct"). Accordingly, this factor also weighs in favor of entering default judgment against the Defendants.

Default judgment is thus appropriate and warranted here. *See Indymac Bank, F.S.B.*, 2007 WL 4468652, at *1 (finding that "all three factors weigh in favor of granting Plaintiff's request for default judgment").

### III.     Google is Entitled to a Permanent Injunction.

"It is well established that a court may grant a permanent injunction as part of a default judgment." *BMaddox Enters. LLC v. Milad Oskouie, Osko M Ltd.*, 2021 WL 3675072, at *15 (S.D.N.Y. Aug. 18, 2021); *see Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015) (collecting cases). "The requirements for a permanent injunction are 'essentially the same' as for a preliminary injunction, except that the moving party must demonstrate 'actual success' on the merits." *N.Y.C.L. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Because a default judgment is warranted, Google is also entitled to a permanent injunction.

Google has demonstrated actual success on the merits several times over. The Court already found a likelihood of success on the merits when it granted a TRO and a preliminary injunction, the latter of which remains in effect. *See* ECF Nos. 34 at Ex. B, 18. Now that Defendants have defaulted, Google's well-pleaded facts are deemed admitted. *See, e.g.*, *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, 2013 WL 5977440, at *4 (S.D.N.Y. Nov. 12, 2013) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."), *report and recommendation adopted*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014). Moreover, "as long as the complaint has stated a valid cause of action," a defendant's default

10

establishes the defendant's liability. *See Laboratorios Rivas, SRL*, 2013 WL 5977440 at \*4. Here,

Defendants have clearly defaulted, and the allegations set forth in Google's Complaint state valid

causes of action for violations of the CFAA and RICO statutes.

In addition to demonstrating success on the merits, to secure a permanent injunction, a

plaintiff must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at

law are inadequate to compensate for that injury; (3) in light of the hardships on the plaintiff and

defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by

a permanent injunction. *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006). All four

factors are met here.

***Irreparable injury and inadequate remedies at law.*** Google has established that the

BadBox 2.0 Enterprise harmed the owners of the infected devices, Google, and countless other

persons and entities and that legal remedies are inadequate to compensate for that harm.

"[C]ircumstances[] such as insolvency or unsatisfiability of a money judgment[]can show

irreparable harm." *Khepera-Bey v. Santander Consumer USA, Inc.*, 2013 WL 3199746, at \*4

(D. Md. June 21, 2013). The Enterprise infected more than ten million devices with malware.

Without continued injunctive relief to prevent its reconstitution, the Enterprise will infect

thousands of new devices, conscripting those machines into tools for its cybercrimes. *See* ECF

No. 18; Harris Decl. at Ex. 4. In addition, Defendants' actions damaged Google's goodwill and its

reputation, which Google has cultivated over decades with the development of numerous products

used by billions of people each day. Injury to business goodwill constitutes irreparable harm. *E.g.*,

*Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 44 (2d Cir.

1986); *see also, e.g.*, *Microsoft Corp. v. Does 1–8*, 2015 WL 4937441, at \*10 (E.D. Va. Aug. 17,

2015) (issuing default judgment and a permanent injunction where a botnet "is damaging to the Plaintiffs' brands and the customer goodwill").

**Balance of the equities.** The balance of the equities tip decidedly in Google's favor. Defendants will suffer no harm to any legitimate interest if this Court issues a permanent injunction. Defendants' criminal enterprise is illegal, defrauds consumers, and injures Google. There are no countervailing equities to consider. *See, e.g.*, *FTC v. Verity Int'l, Ltd.*, 2000 WL 1805688, at *1 (S.D.N.Y. Dec. 8, 2000) (finding that the balance of equities weighs in favor of injunctive relief where defendant's practices probably violate a federal statute); *US Airways, Inc. v. US Airline Pilots Ass'n*, 813 F. Supp. 2d 710, 736 (W.D.N.C. 2011) (same). There is simply no reason why Defendants should be permitted to reconstitute an illegal scheme that injures Google, its customers, and the public.

**Public interest.** Finally, a permanent injunction would serve the public interest. The public interest is clearly served by enforcing statutes designed to protect the public, such as the CFAA and RICO. *See, e.g.*, *FXDirectDealer, LLC v. Abadi*, 2012 WL 1155139, at *8 (S.D.N.Y. Apr. 5, 2012) ("[T]he public has an interest in seeing that . . . cyber-fraud is prevented."). The BadBox 2.0 botnet infiltrated over ten million consumer devices. Without an injunction, the Defendants would infect and damage more devices, defraud more victims, and facilitate more crimes by other cybercriminals. If the botnet is allowed to reconstitute and grow, it will become even more threatening, will pose a greater risk, and could be deployed to commit other crimes, including DDoS attacks.

The Court's preliminary injunction therefore should be made permanent.[2]

---

[2] Courts have granted permanent injunctions and entered default judgments against doe defendants in similar cases involving botnets. *See, e.g.*, *Microsoft Corp. v. Tu*, 2024 WL 4516416, at *3

**IV.     Google Withdraws Its Damages Request.**

Google's Complaint sought a judgment awarding (i) actual damages, (ii) enhanced, exemplary,

and special damages, and (iii) attorneys' fees and costs, *see* ECF No. 22; however, Google hereby

withdraws its request for monetary damages in connection with its motion for Default Judgment

and a Permanent Injunction.

**CONCLUSION**

For the foregoing reasons, this Court should enter default judgment for Google and issue a

permanent injunction against Defendants.


Dated: September 3, 2025                              Respectfully submitted,

                                                      */s/ Laura Harris*

                                                      Laura Harris
                                                      **KING & SPALDING LLP**
                                                      1185 Avenue of the Americas, 34th Fl.
                                                      New York, NY 10036-2601
                                                      Tel: (212) 556-2100
                                                      Fax: (212) 556-2222
                                                      lharris@kslaw.com

                                                      Sumon Dantiki (admitted *pro hac vice*)
                                                      Christine M. Carletta
                                                      **KING & SPALDING LLP**
                                                      1700 Pennsylvania Ave., NW, Suite 900
                                                      Washington, DC 20006-4707
                                                      Tel: (202) 737-0500
                                                      Fax: (202) 626-3737
                                                      sdantiki@kslaw.com
                                                      ccarletta@kslaw.com

                                                      *Counsel for Plaintiff Google LLC*

---

(S.D.N.Y. Aug. 29, 2024); *Microsoft Corp. v. Does 1–2*, 2021 WL 4260665, at *2 (E.D.N.Y. Sept. 20, 2021); *Microsoft Corp. v. Does 1–51*, 2018 WL 3471083, at *2 (N.D. Ga. June 18, 2018).

**CERTIFICATE OF COMPLIANCE**

I, Laura Harris, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c), that the foregoing Google LLC's Memorandum of Law in Support of Its Motion for Default Judgment and a Permanent Injunction was prepared using Microsoft Word and contains 3,850 words in accordance with Local Rule 7.1(c).


/s/ Laura Harris
Laura Harris

14